IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY WILLIAMS, | Case No. 1:19-cv-172 |
| Petitioner | |
| | UNITED STATES MAGISTRATE JUDGE |
| v. | RICHARD A. LANZILLO |
| WARDEN OF FCI MCKEAN, | |
| | MEMORANDUM OPINION AND |
| Respondent | ORDER |

I. Introduction

Presently pending is a petition for writ of habeas corpus filed by pro se Petitioner Larry Williams (Petitioner) pursuant to 28 U.S.C. § 2241. ECF No. 3. Petitioner contends that his due process rights were violated in the context of a disciplinary hearing held at FCI McKean, where he is currently incarcerated. For the following reasons, Petitioner's § 2241 petition is denied.[1]

II. Background

On August 17, 2018, at approximately 10:55 a.m., a staff member at FCI McKean discovered a black LG cell phone in the possession of an inmate named Padilla. ECF No. 10-5 at 4. After reviewing a forensic analysis of the phone, the reporting officer determined that Petitioner had used the phone to make or receive at least sixteen phone calls between June 25, 2018, and August 17, 2018. *Id.* The officer based his conclusion on the fact that those calls were made to two individuals identified as "friends" on Petitioner's contact list. *Id.* Those individuals did not appear on the contact list of any other inmates. *Id.* Based on this

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

1

information, the officer concluded that Petitioner had used and possessed the cell phone within the confines of FCI McKean and charged him with possession of a hazardous tool in violation of Prohibited Act Code 108. ECF No. 10-5.

On September 12, 2018, the prison served Petitioner with incident report 3168627 charging him with a violation of Code 108. ECF No. 10-5 at 6. As part of the investigation, Petitioner was advised of his rights and stated, "I wasn't using that phone." *Id.*

On September 15, 2018, Petitioner appeared before the Unit Discipline Committee ("UDC") for a hearing. *Id.* at 5. At the hearing, Petitioner again stated that he hadn't been using the phone. *Id.* The UDC determined that there was sufficient evidence to move forward and referred the incident report to the DHO with a recommendation that greater sanctions be imposed. *Id.* Petitioner was given notice of the upcoming hearing, advised of his rights, and asked if he wanted to call any witnesses. *Id.* at 17-19. Petitioner waived his right to a staff representative but asked to call an inmate named Peterkin as a witness. *Id.* at 17-18.

On September 25, 2018, the prison conducted Petitioner's DHO hearing. *Id.* Petitioner acknowledged that he had received a copy of the incident report, understood his rights, and verified that he waived his right to a staff representative. ECF No. 10-5 at 2. Speaking on his own behalf, Petitioner stated that he "never touched that phone" and "never used it or asked anyone to do anything for me on it, period." *Id.* Inmate Peterkin testified and stated that he was "the one who made the phone calls." *Id.* According to Petitioner, Peterkin recited the phone numbers from memory and identified the individuals belonging to each phone number. ECF No. 5 at 11. However, the DHO concluded that the greater weight of evidence supported the conclusion that Petitioner had committed the act as charged. *Id.* at 3. In reaching his decision, the DHO considered Petitioner's statement, Peterkin's testimony, the reporting officer's incident

report, and the forensic records indicating that Petitioner was the only inmate in the prison with those phone numbers on his contact list. *Id.* The DHO rejected Peterkin's testimony because "there [was] no evidence to show inmate Peterkin utilized those phone numbers" and "[Petitioner] remains the sole inmate having the phone numbers on his lists." *Id.* After concluding that Petitioner had committed the charged offense, the DHO sanctioned him with 41 days loss of good conduct time, a forfeiture of 30 days of non-vested good conduct time, and a one-year loss of visiting privileges. *Id.*

The instant petition for writ of habeas corpus,[2] filed pursuant to 28 U.S.C. § 2241, challenges the due process provided during Petitioner's DHO hearing. Petitioner raises four arguments: (1) insufficient evidence supported the DHO's finding of guilt; (2) the DHO violated due process by relying on evidence that had not been provided to Petitioner prior to the hearing; (3) the DHO was impartial; and (4) the Bureau of Prison's relied on "erroneous facts" in the course of denying Petitioner's appeal. ECF No. 5.

III. Standard for Review

Federal prisoners have a liberty interest in statutory good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *see also* 18 U.S.C. § 3624(b)(1). While "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply," the United States Supreme Court has identified the following minimum procedural due process rights that must be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the

---

[2] Under § 2241, district courts have authority to grant habeas corpus "within their respective jurisdictions." Petitioner is confined at FCI McKean, which is located within the territorial boundaries of the Western District of Pennsylvania.

disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-57 (1985). *See also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) ("[A] reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause."). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 Fed. Appx. 84, 86–87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455). Rather, "[o]nce the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." *Cardona v. Lewisburg*, 551 Fed. Appx. 633, 637 (3d Cir. 2014).

IV. Discussion

A. Sufficiency of the evidence

Petitioner's first challenge concerns whether there was "some evidence" to support the DHO's decision. Petitioner primarily accuses the DHO of failing to credit inmate Peterkin's testimony that he had placed each of the calls to the individuals on Petitioner's contacts list.

However, the DHO determined that the greater weight of the evidence supported the finding that Petitioner had placed the calls. In reaching this decision, the DHO considered the reporting officer's incident report, Petitioner's statement, the forensic evidence derived from the phone, and the testimony from Peterkin. The DHO rejected Peterkin's testimony and concluded that Petitioner must have placed the calls because he was the only inmate in the prison with those phone numbers on his contact list. *See, e.g., Gonzalez v. Hollingsworth*, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) ("[C]ourts have found that the presence . . . of a number which only appears on a particular inmate's approved phone list constitutes 'some evidence' that such inmate possessed the cell phone in question."); *Burns v. Hollingsworth*, 2014 WL 1117932, at *2 (D.N.J. Mar. 20, 2014) (collecting cases for the same proposition). Based upon the foregoing, the Court finds that "some evidence" supported the charge and, therefore, Petitioner's due process rights were not violated by the DHO's determination. *See Donahue v. Grondolsky*, 398 Fed. Appx. 767, 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh the evidence, or re-assess the credibility of [a petitioner's] defense"); *Sepulveda v. Warden Canaan USP*, 645 Fed. Appx. 115, 118 (3d Cir. 2016) (reviewing court may not independently assess the credibility of witnesses or re-weigh the evidence so long as the DHO's decision is supported by "any evidence in the record") (quoting *Hill*, 472 U.S. at 454-56).

B. Failure to follow procedures

Petitioner next contends that the procedures utilized by the DHO violated his due process rights by depriving him of the opportunity to review the evidence against him. By way of background, the Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled: Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court's

5

decision in *Wolff*. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff must prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charges against him at least twenty-four hours before the DHO's hearing unless said notice is waived. 28 C.F.R. § 541.8(c). The inmate is entitled to appear at the hearing, make a statement, present documentary evidence, have a staff representative, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate must receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

Petitioner concedes that his hearing complied with each of these requirements, at least superficially. ECF No. 12 at 1. He contends, however, that he "requested to be provided with the times the calls were made but was denied that information." *Id.* According to Petitioner, this deprived him of the opportunity to provide an alibi for those times, including the possibility that security footage might have showed him doing something else when the calls were made. *Id.* Petitioner also notes that the DHO's report lists a "photograph" as Documentary Evidence, but that no such photograph was provided to Petitioner. ECF No. 5 at 14.

Petitioner's argument fails for several reasons. As an initial matter, there is no evidence in the record to support the averment, contained only in Petitioner's legal briefs, that he actively sought this evidence prior to or during his DHO hearing. *See Bacon v. Ortiz*, 2021 WL 1138137,

6

at *6 (D.N.J. Mar. 25, 2021) (rejecting due process claim where Petitioner asserted in his memorandum of law that he "asked for a forensic phone search to find out if the phone could be linked" to him but failed to show that his request appeared "anywhere in the record"). Nor does it appear that Petitioner objected to the omission of this evidence at his hearing or requested a delay or postponement of the hearing so that he could obtain the times of the phone calls. *See Donahue*, 398 Fed. Appx. at 771 ("At a minimum, [the petitioner] should have brought his concern about the contents of the SIM card to the attention of the DHO at his disciplinary hearing . . . and he should have asked for a postponement of the hearing."). To the contrary, Petitioner "raised no issues about the disciplinary process" at the time of his hearing. ECF No. 5-1 at 2. Because there is no evidence that the DHO withheld or refused to produce the call log, Petitioner's due process rights were not violated.[3] *Brown v. Quay*, 2020 WL 5946956, at *3 (M.D. Pa. Oct. 7, 2020). *See also Gomez v. Warden FCI Allenwood*, 2020 WL 2556916, at *4 (M.D. Pa. May 20, 2020) (inmate-petitioner's request for video surveillance was not denied because nothing in the record supported the petitioner's assertion that he requested such video); *Laor v. Fed. Bureau of Prisons*, 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").

Even if the record supported Petitioner's averment that he requested additional cell phone data in a timely fashion, his contention that he could have established a successful alibi defense with that evidence is purely speculative. Petitioner offers only that he "may have been able to

---

[3] Petitioner does appear to have requested the call log in his administrative appeal. However, this request came "too late for any prison official at the hearing level to respond appropriately to the request." *Donahue*, 398 Fed. Appx. at 771 (affirming district court's finding that the petitioner "did not make a timely request to anyone directly involved in the disciplinary proceedings" because he first raised the issue in an administrative appeal).

7

account for his whereabouts" during one or more of the calls had he been provided with the full call log. ECF No. 5 at 14. However, he has not explained with any particularity how he would have done so, much less supplied evidence in support of his hypothetical alibi. For example, while he speculates that security footage "could have possibly accounted for his whereabouts at the times the calls were made," there is no evidence in the record that Petitioner asked for security footage to be preserved. Nor has he explained what security footage might have shown him doing in lieu of making the phone calls on any of the dates in question. In short, his "bald assertion" that he could have defended against the charge is "purely speculative" and must be rejected. *Obiegbu v. Werlinger*, 488 Fed. Appx. 585, 586 (3d Cir. 2012) (affirming denial of habeas petition where petitioner failed to demonstrate prejudice from alleged procedural errors in his disciplinary proceedings).

Finally, the Court notes that the minimum due process rights outlined by the United States Supreme Court's decision in *Wolff* do not include an unfettered right to review or present evidence. *Wolff*, 418 U.S. at 563-67 (requiring an impartial decision-maker, advance notice in writing of the charges, an opportunity to call witnesses and present evidence, assistance from an inmate representative, and a written decision). For example, the right to present evidence "may [be] trumped by a legitimate security concern." *Pinet v. Holt*, 2008 WL 3837214, *2 (M.D .Pa. Aug.13, 2008), *aff'd* 316 Fed. Appx. 169, 171–72 (3d Cir. 2009). Prison officials' discretion in this regard "is quite broad" given "the demands of prisoner safety and institutional order." *Young v. Kann*, 926 F.2d 1396, 1400 (3d Cir. 1991).

Nor do the Bureau of Prisons' inmate disciplinary procedures provide an inmate with unfettered access to investigatory materials. The pertinent regulation, 28 C.F.R. § 541.14(b)(2) (2009), provides:

> The investigator shall record all steps and actions taken on the Incident Report and forward all relevant material to the staff holding the initial hearing. **The inmate does not receive a copy of the investigation.** However, if the case is ultimately forwarded to the Discipline Hearing Officer, **the DHO shall give a copy of the investigation and other relevant materials to the inmate's staff representative** for use in presentation on the inmate's behalf.

(Emphasis added). Thus, although Petitioner had no right to view the investigation and other relevant materials, he could have requested a staff representative, who then would have been able to review it. 28 C.F.R. § 541.14(b)(2). Petitioner, however, expressly waived his right to a staff representative at his DHO hearing. *See Molina*, 2011 WL 5553621, at *4–7 (no due process violation where inmate was not permitted to review video footage of the disciplinary incident; inmate waived right to request a staff representative who would have been permitted to review the footage); *Young v. Kann*, 926 F.2d 1396, 1401 (3d Cir. 1991) (noting that an inmate does not have a right to receive a copy of the investigation report but that, if a case proceeded to a hearing before a DHO, an inmate's staff representative, if any, should at that point be provided with a copy of the investigation report). Thus, Petitioner has failed to establish that he would have been entitled to review the investigatory evidence he is seeking even if he could demonstrate that he requested it.

In short, Petitioner has failed to supply any evidence that he requested the cell phone data at issue prior to his DHO hearing. He has also failed to demonstrate that he would have been entitled to receive that data or that he could have successfully established an alibi had it been provided. For each of these reasons, his due process claim fails.

C. Bias

Petitioner next contends that the Disciplinary Hearing Officer who conducted his DHO hearing, Lieutenant K. Bacote, "is the supervisor and co-worker of the officers that write the

9

incident reports and could never be considered an impartial decision maker." ECF No. 5 at 15. This claim lacks merit. In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." *See Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). Conclusory allegations that a DHO must be biased because of their supervisory position within the prison "[a]re not sufficient to indicate the type of "direct personal or otherwise substantial involvement" required to show impartiality. *Id. See also Lewis v. Canaan*, 664 Fed. Appx. 153, 156 (3d Cir. 2016). Because Petitioner has not presented any evidence that Bacote had a direct personal or substantial involvement in the confiscation or forensic examination of the cell phone at issue, his claim of bias fails.

D. Errors in appellate report

Petitioner's final argument is that the BOP's Central Office used "erroneous facts" to improperly deny his appeal. As explained by Petitioner:

> Ian Conners of National Inmate Appeals at the Bureau of Prisons' Central Office denied Petitioner's appeal stating "you were found to have committed the prohibited acts of Possession, Manufacturing, Introduction, or Loss of a Hazardous Tool (Code 108); Assaulting without Serious Injury (Code 224); and Refusing to Obey an Order (Code 307). This is completely and utterly erroneous as Petitioner was only charged with and found guilty of violating Code 108.

ECF No. 5 at 15. Petitioner maintains that Conner's reference to two inapplicable charges indicates that he either failed to read Petitioner's appeal or confused Petitioner's appeal with another case, denying him a proper final review. *Id.*

The error in Conner's report appears to be nothing more than a simple mistake. Conner's report includes the correct incident report number, hearing date, relief requested by Petitioner,

and otherwise appears to be addressed to the proper incident. Typographical errors such as those in Conner's report do not violate due process. *See, e.g., Millhouse v. Warden Lewisburg USP*, 785 Fed. Appx. 931, 935 (3d Cir. 2019) (finding no due process violation where the incident report contained a typographical error misidentifying the inmate's name in the description of the incident); *Crane v. White*, 2020 WL 4347382, at *3 (M.D. Pa. July 29, 2020) (noting several errors in the DHO report, including a misidentification of the petitioner, an incorrect inmate number, an incorrect offense date, and a citation to the wrong incident report, but concluding that, "[w]hile the errors are regrettable, it is clear that they are typographical errors, which do not constitute a due process violation."); *Dorsey v. Ortiz*, 2021 WL 1171894, at *6 (D.N.J. Mar. 29, 2021) (no due process violation where incident report contained several typographical errors including the wrong name and unit number of the institution where the incident took place).

V.     Conclusion

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is dismissed.[4] The Clerk is directed to mark this case closed.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: July 6, 2021

---

[4] Because "[f]ederal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement," the Court need not make a certificate of appealability determination in this matter. *Williams v. McKean*, 2019 WL 1118057, at *5 n. 6 (W.D. Pa. Mar. 11, 2019) (citing *United States v. Cepero*, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by *Gonzalez v. Thaler*, 565 U.S. 134 (2012)); 28 U.S.C. § 2253(c)(1)(B).